1  David M. Poore, SBN 192541
   Scott A. Brown, SBN 177099
2  BROWN | POORE LLP
   1350 Treat Blvd., Suite 420
3  Walnut Creek, California 94597
   Telephone:    (925) 943-1166
4  dpoore@bplegalgroup.com

5  James Mills, SBN 203783
   LAW OFFICES OF JAMES MILLS
6  1300 Clay Street, Suite 600
   Oakland, California 94612
7  Telephone:    (510) 521-8748
   Facsimile:    (510) 277-1413
8  james@jamesmillslaw.com

9  Attorneys for Plaintiffs
   ANTHONY LOZANO
10 KEITH YANAGI

11

12                          **UNITED STATES DISTRICT COURT**

13                         **NORTHERN DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  ANTHONY LOZANO; KEITH YANAGI, | **Case No.** |
| 16        Plaintiffs, | **COMPLAINT FOR DAMAGES, EQUITABLE AND/OR INJUNCTIVE RELIEF** |
| 17 | |
| 18  v. | VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 ET SEQ; VIOLATIONS OF THE FAIR EMPLOYMENT AND HOUSING ACT, GOVERNMENT CODE §12940, ET. SEQ.; WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; VIOLATIONS OF THE OLDER WORKER BENEFIT PROTECTION ACT, 29 U.S.C. § 626; FRAUD AND CONCEALMENT; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| 19 | |
| 20  SAN FRANCISCO 49ERS, LTD; JED YORK; and DOES 1 through 50, inclusive, | |
| 21 | |
| 22        Defendants. | |
| 23 | |
| 24 | |
| 25 | |
| 26 | **JURY TRIAL DEMANDED** |

27

28

-1-
COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
LOZANO ET AL V. SAN FRANCISCO FORTY-NINERS

Plaintiffs ANTHONY LOZANO and KEITH YANAGI complain and allege as follows:

## PARTIES AND JURISDICTION

1. Plaintiff ANTHONY LOZANO is, and at all relevant times hereto, has been a resident of the State of California.

2. Plaintiff KEITH YANAGI is, and at all relevant times hereto, has been a resident of the State of California.

3. Plaintiffs are informed and believe and thereby allege that Defendant SAN FRANCISCO 49ERS, LTD, a limited partnership ("49ers" or "Defendant") is a professional football team with the National Football League ("NFL"), which maintains its principal offices and/or principal place of business in this judicial district in the State of California.

4. At all relevant times, Defendant 49ers was an employer in the State of California, and, as such, was prohibited from discriminating in the terms and conditions of employment on the basis of any protected category, including the fact that an employee is over the age of 40 years. Defendant 49ers employed more than 20 full-time employees, and, as such, it was an employer within the meaning of the California Fair Employment and Housing Act ("FEHA"), the Age Discrimination in Employment Act ("ADEA"), and the Older Workers Benefit Protection Act ("OWBPA").

5. Plaintiff is informed and believes that Defendant JED YORK ("York") is an individual whose residence is located in the State of California. At all relevant times, York was the CEO of the San Francisco 49ers, and he was the individual who made the decision to terminate Plaintiffs' employment, and to conceal material facts from the Plaintiffs in connection with the termination decision.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1367, in that Plaintiffs are asserting federal claims, including violations of the ADEA and OWBPA, and the Court has supplemental jurisdiction over Plaintiffs' state law claims, in that they arise from the same common nucleus of operative facts.

7. Venue is proper in the Northern District of California, in that Plaintiffs were employed by Defendant 49ers in this judicial district.

8. Plaintiffs are unaware of the true identity, nature and capacity of each of the Defendants designated herein as a DOE, whether individual, corporate, associate or otherwise, who therefore sues such defendants by fictitious names pursuant to California Code of Civil Procedure §474. Plaintiffs are informed and believe and thereby allege that each of the Defendants designated herein as a DOE is in some manner responsible for the damages and injuries as are alleged in this Complaint. Upon learning the true identity, nature and capacity of the DOE Defendants, Plaintiffs will amend this Complaint to allege their true names and capacities.

9. Plaintiffs have exhausted all administrative remedies with the Department of Fair Employment and Housing ("DFEH") and the United States Equal Employment Opportunity Commission ("EEOC") and Plaintiffs have received the appropriate and timely right-to-sue letters. The EEOC conducted an investigation of this matter from 2012 until October 2014, and the EEOC issued Plaintiffs a right-to-sue letter within the past 90 days. Moreover, at least 60 days has passed since Plaintiffs filed their administrative charges with the EEOC, alleging violations of the ADEA and OWBPA.

10. Unless otherwise indicated as acting in individual capacity, Plaintiffs are informed and believe, and thereby allege that each of the Defendants herein were at all times relevant hereto, the agents, representatives, servants and employees of the remaining Defendants, and were acting at least in part within the course and scope of such relationship, and that the wrongful acts alleged herein were committed by such Defendants, and each of them.

**FACTUAL BACKGROUND**

11. Plaintiff Anthony Lozano is a former employee of Defendant San Francisco 49ers. Defendant hired Plaintiff back in 1989 as a Facilities Manager, a senior leadership position within the 49ers organization. Plaintiff had an outstanding employment record, and he performed his duties and responsibilities as a 49ers employee in an excellent manner for over 22 years. Plaintiff received consistent positive performance reviews, including several letters of appreciation and thank you commendations from two team ownerships spanning more than two decades, including

a letter of appreciation from Dr. John York, the owner of the team. Plaintiff was named employee of the month in 2010.

12. Defendant York's Chief of Staff, Peter Malcolm, admitted that job performance had nothing to do with Plaintiff Lozano's termination. Mr. Malcolm simply told Plaintiff that they were "going in a different direction," but, when Plaintiff asked for an explanation as to what that term meant, Mr. Malcolm could provide none.

13. Plaintiff Lozano's date of birth is April 30, 1955. He was 56 years old when he was notified of his termination.

14. Plaintiff Keith Yanagi was another long-term managerial employee with Defendant San Francisco 49ers. Defendant hired Plaintiff Yanagi back in 1987, as a video assistant, and, through hard work and dedication to the 49ers' organization, Yanagi was promoted in 2004 to the position of Director of Video Operations, a senior leadership position within the 49ers organization. Plaintiff worked for the 49ers for approximately 25 years. Plaintiff also had an outstanding employment record, while receiving excellent evaluations.

15. Defendant's Senior Manager of Human Resources, Tina Rojas, in an investigative interview, initially admitted that she did not know why Yanagi was terminated, but then Ms. Rojas later shifted her story to claim that Yanagi was terminated for "performance" reasons, but she could not articulate what those reasons were.

16. Plaintiff Yanagi's date of birth is August 1, 1951. He was 59 years old when he was notified of his termination.

17. In 2010, Defendant Jed York, the CEO of the 49ers, was actively looking for additional revenue streams for the 49ers, including making active attempts to move the San Francisco 49ers to a new stadium in Silicon Valley, so that the 49ers could be rebranded as a team within the NFL that was "technology" driven. As part of that strategy, York hired Gideon Yu, a former executive at Facebook, YouTube, and Yahoo. Defendant York hired Mr. Yu as the 49ers' Chief Strategy Officer, and, in April 2011, York informed the employees that Mr. Yu would be working closely with him to re-brand the 49ers as a technology "startup" within the NFL, so that they could achieve their objective of moving the 49ers to a new stadium in Silicon Valley. When

Mr. Yu arrived for work at the 49ers, he openly referred to the older workers as "legacy employees," a discriminatory term used to describe older employees in Silicon Valley.

18. As part of that technology strategy, in December 2012, Defendant York openly admitted that he wanted to hire the predominantly younger technology workers from the neighboring Silicon Valley technology companies. When asked why the 49ers wanted to hire these young technology workers, York said, "Because they made a lot of money, they did a lot of cool things before they turned 40 years old, and they don't want to go play golf six days a week." As a result, York and his staff engaged in an active strategy to quietly recruit younger technology workers to join the management and senior leadership ranks of the 49ers.

19. In order to make room for the younger technology workers, York engaged in a campaign to terminate the older, senior managers within the 49ers organization. For example, when York was reviewing the resumes of potential employees in late-2010, York was faced with two potentially qualified candidates for the job. When asked which of the two candidates he wanted to hire, York said, "Let's go with the younger one."

20. Moreover, when Ms. Rojas was interviewed, she admitted that there were "a lot" of senior managers fired in 2011 and 2012, but she was not privy to the reasons why, as those decisions were made by Defendant York and his executive staff. When asked what efforts were made to comply with the Older Workers Benefit Protection Act, Ms. Rojas admitted, "none." When asked how many employees were provided with "settlement agreements" during this period of time, she responded that there were "many others" that were given settlement releases.

21. In addition to engaging in a campaign to terminate older workers, Plaintiff Lozano was subjected to several comments and remarks about his age, shortly before he was fired. For example, when Lozano would attend leadership staff meetings, Jim Mercurio, the Vice President of Stadium Operations would demean Lozano because his hair was now, "gray." These comments were not jokes, but, instead, they were remarks that demonstrated the 49ers unhappiness with its older senior managers. These comments were inappropriate and discriminatory. Moreover, in late-2010, Mr. Mercurio asked Plaintiff Lozano, "How much longer do you intend to work."

22. The Older Workers Benefit Protection Act ("OWBPA") requires that employers, like the 49ers, take certain mandatory legal steps before engaging in a group termination of older workers, when they ask those workers to sign a separation agreement that releases claims of age discrimination. When an employer wants to fire a group of older workers, and it presents the employees with a signed severance or separation agreement which contains a release of all employment claims, including claims pertaining to age discrimination it must (1) provide the older workers with at a minimum 45-days notice to consider the releases, and (2) provide the older workers with statistical information, including disclosures of the age and job classifications of the employees that were being terminated. The purpose of providing this information to the older workers is so that they can evaluate whether or not their employer is engaging in acts of age discrimination in violation of the federal ADEA.

23. Moreover, when an employer presents a settlement agreement and release to an older worker as part of a termination package, it must (1) disclose the advantages and disadvantages of signing the agreement, (2) use written language that is calculated to be understood by an average employee (i.e. avoiding using "legalese"), and (3) the employer must provide something of benefit to the employee, to which he or she is not already entitled.

24. When York terminated Plaintiffs' employment, Defendants failed to comply with the requirements of the OWBPA. York knew that he was engaging in a group termination of older workers, but York and his staff made active efforts to conceal that information, so that they did not have to provide the required 45-days notice, along with the mandatory statistical information, which would have demonstrated that the 49ers were engaging in a pattern and practice of age discrimination. Instead of disclosing this information, as required under federal law, York concealed this information from the Plaintiffs and other older employees by engaging in a scheme to separate the effective dates of the terminations of the older workers by only a few days, weeks, or months. When they were terminated, both Plaintiffs were told that this was an individual decision.

25. Furthermore, after Plaintiffs later learned the true facts surrounding the terminations, and they made complaints to the EEOC about the "group termination" in 2012, the

49ers changed their business practice, including the language of their separation agreements, to reflect that the decision to terminate the older workers was a "group" termination decision, not an individual one, thereby admitting that their original practice violated the OWBPA.

26. In addition to concealing the material information about the "group" termination of older workers, the settlement agreements that Defendants compelled Plaintiffs to sign as part of a standard severance package violated other provisions of OWBPA. The agreements contained no disclosures of the advantages and disadvantages in signing the settlement agreements; the agreements were not written in a manner that was calculated to be understood by the average employee with no legal training; and the settlement agreements did not provide the Plaintiffs with any severance benefits to which they were not already entitled to.

27. On or about April 13, 2011, Plaintiff Yanagi's immediate manager, Jeff Ferguson, asked Plaintiff Yanagi to meet in the linebacker meeting room. When Plaintiff arrived, Ms. Rojas, the Senior Human Resources Manager, was present. When Yanagi went into the room, she advised him that he was being terminated after 25 years of service. She advised Yanagi that this decision had nothing to do with his performance, but, instead, the 49ers organization was "going in a different direction." When Yanagi asked Ms. Rojas what that term meant, she could not provide any explanation. Rojas then presented Yanagi with a settlement agreement and release.[1] She urged Plaintiff to sign the agreement immediately, or else he would lose important benefits, such as the "severance package" contained in the agreement, as well as other employment benefits. The settlement agreement and release spanned more than five pages of single-spaced "legalese" that was not calculated to be understood by an average employee with no legal training. When Yanagi attempted to read the agreement, it appeared contradictory and confusing. Yanagi brought his concerns to Ms. Rojas, who appeared somewhat agitated during the meeting, and she volunteered that Yanagi could still sue the 49ers for age discrimination for at least a year, if he believed he had a viable claim. Ms. Rojas told Yanagi he only had seven (7)

---

[1] Plaintiffs are not attaching the settlement agreements and releases to the Complaint, at this point in the litigation. Plaintiffs will seek leave of court to include the agreements as exhibits to the Complaint, under seal, if necessary, as the agreements technically contain, "Confidentiality" provisions, which Defendants included in the agreements.

-7-
COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
LOZANO ET AL V. SAN FRANCISCO FORTY-NINERS

days to sign the agreement. Rojas also told Yanagi that he would remain as an employee on the books until the formal date of his termination on October 13, 2011, if he signed the agreement.

28. During this meeting Ms. Rojas and Defendants concealed the fact that their actions involved a group termination of older employees. Instead, Ms. Rojas told Yanagi that this was an individual employment decision that effected only him. Ms. Rojas failed to provide Plaintiff with any of the required disclosures under OWBPA. Had Plaintiff Yanagi known the true facts surrounding his termination, he would not have signed the settlement agreement.

29. When Ms. Rojas was interviewed after the termination, she denied ever attending the termination meeting with Plaintiff Yanagi.

30. On or about July 31, 2011, Defendant York's Chief of Staff, Peter Malcolm, asked to meet with Plaintiff Lozano. Plaintiff had just completed setting up the 49ers annual summer camp. When Plaintiff Lozano arrived in the office, Malcolm appeared visibly agitated, and standing next to him in the room was one of the 49er's security officers, who was also a Millbrae Police Department officer. Mr. Malcolm then told the Plaintiff that he was being terminated after more than 22 years of service, as the 49ers were "going in a different direction." Mr. Malcolm kept repeating that the 49ers were "going in a different direction," but, when Plaintiff Lozano asked for an explanation as to what that term meant, Mr. Malcolm could not provide any explanation. Mr. Malcolm then presented Lozano with a settlement agreement and release, saying, "Jed is being very generous" with the severance. Mr. Malcolm urged Plaintiff to immediately sign the agreement, or else he would lose important employment benefits. The settlement agreement and release spanned more than five pages of single-spaced "legalese" that was not calculated to be understood by an average employee with no legal training. Mr. Malcolm informed Lozano that he would remain as an employee on the payroll until the formal date of his termination on February 1, 2012, if he signed the agreement, and Plaintiff could still continue to use the company van and cell phone.

31. During this meeting Mr. Malcolm and Defendants concealed the fact that their actions involved a group termination of older employees. Instead, Mr. Malcolm told Lozano that this was an individual employment decision that effected only him, as the organization was going

-8-

in a different direction. Mr. Malcolm failed to provide Plaintiff with any of the required disclosures under OWBPA. Had Plaintiff Lozano known the true facts surrounding his termination, he would not have signed the settlement agreement.

32. Plaintiffs only learned of the true facts surrounding the "group termination" in approximately March 2012.

**FIRST CAUSE OF ACTION**

(Violations of the ADEA – Defendant San Francisco 49ers Only)

33. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34. The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq., prohibits an employer from discriminating in the terms and conditions of employment based upon the fact that an employee is over the age of 40 years old.

35. Defendant San Francisco 49es violated the ADEA with regard to Plaintiffs when it discriminated against Plaintiffs on the basis of age, and terminated Plaintiffs employment because of the fact that Plaintiffs are over the age of 40 years old.

36. Defendant's conduct toward Plaintiffs as alleged above, constitutes an unlawful employment practice in violation of the ADEA.

37. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered damages in an amount to be proven at trial. Plaintiffs also seek the equitable remedy of reinstatement to their former positions.

38. Defendant's conduct is properly characterized as "willful" under the ADEA, and, as a result, Defendant is liable for liquidated damages.

**SECOND CAUSE OF ACTION**

(Violations of the OWBPA – Defendant San Francisco 49ers Only)

39. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40. The Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626 provides that waivers and/or releases of age discrimination claims must be knowing and voluntary.

Congress enacted OWBPA to address the concern that unscrupulous employers were requiring older workers to sign separation agreements that contained waivers or releases of age discrimination claims. Towards that end, OWBPA requires employers to take significant steps when presenting older workers with separation agreements that contain releases of age discrimination claims: (1) if the termination was part of a "group" termination, then the employer must provide the older worker with 45 days to consider the agreement, (2) the employer must provide the older worker with disclosures that expressly show the ages and the classifications of each older worker that was terminated, as part of the group termination, (3) the employer must disclose the advantages and disadvantages to signing the agreement, (4) the language of the agreement must be drafted in such a manner that it is calculated to be understood by an average employee with no legal training, and (5) the agreement must provide the employee with something that he or she is not already entitled to, as a normal part of the severance process.

41. Defendant 49ers violated OWBPA when it required the Plaintiffs to sign separation agreements that waived and released any claims of age discrimination, without complying with the requirements of OWBPA, as set forth above.

42. Defendant failed to provide the Plaintiffs with 45-days notice to consider the separation agreements. Defendant failed to provide the required statutory disclosures. Defendant failed to disclose the advantages and disadvantages of signing the agreement. Defendant failed to use language in the agreements that were calculated to be understood by an average employee with no legal training, and, since it was a regular practice to provide severance agreements to terminated management employees, the agreement did not provide the Plaintiffs with any consideration, above and beyond what they were already entitled to.

43. Defendant's conduct toward Plaintiffs, as alleged above, constitutes an unlawful employment practice in violation of OWBPA and the ADEA.

44. As a direct and proximate result of Defendant's conduct, Plaintiffs seek equitable and/or injunctive relief, including invalidating the ADEA releases in the agreements, and any other relief the Court deems appropriate, according to proof.

**THIRD CAUSE OF ACTION**

(Violations of FEHA – Defendant San Francisco 49ers Only)

45. Plaintiffs incorporate herein by reference all of the allegations contained in paragraphs 1 through 44 of this Complaint as fully set forth herein.

46. California Government Code § 12940 prohibits an employer from discriminating against workers over the age of 40 years old, in the terms and conditions of employment.

47. Defendant 49ers violated California Government Code § 12940 when it engaged in discriminatory practices, as alleged above, based upon the fact that Plaintiffs were older workers over the age of 40 years.

48. As a direct and proximate result of Defendant's discriminatory acts, Plaintiffs have suffered loss of employment opportunities, loss of dignity, great humiliation, and emotional injuries manifesting in physical illness and emotional distress.

49. Defendant's actions have caused and continue to cause Plaintiffs substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, costs of suit, embarrassment and anguish, in an amount according to proof.

50. The acts of the Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiffs and to cause mental anguish, anxiety, and emotional distress. The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant. The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiffs and with the intent to injure Plaintiffs, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

**FOURTH CAUSE OF ACTION**

(Wrongful Termination in Violation of Public Policy – Defendant San Francisco 49ers Only)

51. Plaintiffs incorporate herein by reference all of the allegations contained in paragraphs 1 through 50 of this Complaint as fully set forth herein.

52. It is the fundamental public policy of the State of California that employers, like the 49ers, shall not discriminate against employees on the basis of age, including the fact that

Plaintiffs are over the age of 40 years. These fundamental public policies are embodied in the California Fair Employment and Housing Act, Government Code §§ 12940, et. seq., and the ADEA and OWBPA. These public policies of the State of California were substantial, fundamental, and well established at the time the Plaintiffs were terminated.

53. In acting as alleged herein, Defendant wrongfully terminated Plaintiffs in violation of these public policies.

54. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

55. Defendant's actions have caused and continue to cause Plaintiffs substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, in an amount according to proof.

56. The acts of the Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiffs and to cause mental anguish, anxiety, and emotional distress. The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant. The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiffs and with the intent to injure Plaintiffs, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

**FIFTH CAUSE OF ACTION**

(Fraud/Concealment – All Defendants)

57. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

58. Defendants 49ers and York knowingly concealed material information from the Plaintiffs at the time of their termination, as set forth above. York, Mr. Malcolm, and Ms. Rojas concealed the material fact that Plaintiffs were involved in a "group" termination under the ADEA and OWBPA, and were thus entitled to 45 days to consider the agreement, as well as 45

days to consider the mandatory disclosures of the ages and classifications of each employee that was part of the group termination. Instead, Defendants and their representatives informed the Plaintiffs that this was an individual decision that only affected each of them.

59. The concealed information was material, in that it consisted of required disclosures under federal law, and it would have impacted the decision-making of each Plaintiff, had they known the true facts. Had each Plaintiff known the true facts, they would not have signed the separation agreement, and they would have immediately initiated legal action.

60. The acts of the Defendants went far outside the ordinary course of the compensation bargain.

61. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be proven at trial. Additionally, Plaintiffs seek the equitable remedy and/or injunctive remedy of rescission of the separation agreements, which will be attached as exhibits to this Complaint, after leave of court.

62. The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiffs and to cause mental anguish, anxiety, and emotional distress. The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant. The Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Plaintiffs and with the intent to injure Plaintiffs, constituting oppression, fraud, malice under California Civil Code §3294, entitling Plaintiffs to punitive damages.

**SIXTH CAUSE OF ACTION**

(Intentional Infliction of Emotional Distress – All Defendants)

63. Plaintiffs incorporate herein by reference all the allegations contained in paragraphs 1 through 62 of this complaint as fully set forth herein.

64. Defendants' conduct, as alleged herein, was extreme and outrageous, and went well beyond the normal compensation bargain between an employer and employee. Defendants' conduct took advantage of the unequal bargaining power between the parties, including engaging

in fraud and concealment, which was designed to cause Plaintiffs' emotional harm, or were in reckless disregard for said harm.

65. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered severe and pervasive emotional distress.

66. Defendants' conduct has caused damages in an amount to be proven at trial.

67. The acts of the Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiffs and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Plaintiffs and with the intent to injure Plaintiffs, constituting oppression, fraud, malice under California Civil Code §3294, entitling Plaintiffs to punitive damages

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them as follows:

1. For general damages in an amount according to proof;
2. For special damages in an amount according to proof;
3. For prejudgment interest in an amount according to proof;
4. For punitive damages in an amount according to proof;
5. For equitable and/or injunctive relief;
6. For statutory penalties, including liquidated damages;
7. For reasonable attorney's fees and cost of suit therein;
8. For such other and further relief as the court may deem proper.
9. **Plaintiffs demand a trial by jury**.

Dated:  January 2, 2015                    BROWN | POORE LLP

By:   *//s// David M. Poore*
       David M. Poore
       Attorneys for Plaintiffs
       **ANTHONY LOZANO**
       **KEITH YANAGI**